NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**MARCO A. BOCCATO, OSB #103437**
Assistant United States Attorney
Marco.Boccato@usdoj.gov
310 West Sixth Street
Medford, OR 97501
Telephone (541) 776-3564
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 1:19-CR-00177-AA-1 |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **DAVID CONTRERAS,** | |
| Defendant. | |

### I.  Introduction

Defendant David Contreras was trafficking a massive amount of methamphetamine from California to Oregon. Contreras is facing a mandatory minimum sentence of ten-years in prison and should receive a substantial sentence. There do not appear to be any significant guideline disputes, and the primary issue before the Court is the appropriate sentence under 18 U.S.C. § 3553(a).

/ / /

/ / /

**Government's Sentencing Memorandum**      **Page 1**
Revised Aug. 2019

## II. Factual Background

### A. The Offense Conduct

On April 9, 2019, at around 6:20 p.m., an Oregon State Police (OSP) Trooper stopped a Jeep Liberty for speeding on Interstate 5. The vehicle was traveling north and was near Central Point, Oregon. The trooper made a passenger side approach. During the approach, the trooper observed a cardboard Pepsi box that was ripped open and taped back together. Inside the box, the trooper saw a clear package that contained a crystal substance. Based on his training and experience, the trooper believed the substance was methamphetamine.

The trooper continued processing the traffic violation. While processing the violation, the trooper determined the driver had a suspended Oregon driver's license and the passenger (Contreras) did not possess a license. After another trooper arrived to continue the citation for driving while suspended, the trooper requested consent to search the vehicle from the driver. The driver denied consent and the trooper deployed his narcotics canine. The canine alerted and the trooper conducted a search. Inside the Pepsi box, the trooper located several packages of a substance that appeared to contain methamphetamine. Furthermore, inside a plastic bag and a suitcase, the trooper located several additional packages of methamphetamine. The total weight of the methamphetamine was determined to be over 33 pounds. A portion of the seized methamphetamine was tested by the OSP crime lab, who it determined that it contained at least 5.89 kilograms of actual methamphetamine.

In addition to the methamphetamine, law enforcement located a firearm concealed on driver's person, over $3,000 on Contreras' person, and over $6,000 in a backpack. The driver interviewed with law enforcement and admitted to trafficking the drugs. The driver explained

that he was supposed to report to Contreras and that he had even practiced shooting the gun with Contreras. If the pair were caught by law enforcement, it was the driver's job to take the fall.

In addition, during the traffic stop, Contreras provided law enforcement with a false name and identification documents. Law enforcement later determined that Contreras' real name is Jorge Castillo-Gomez and he is a citizen of Mexico.

**B.     The Charges**

Defendant was charged in a single count indictment with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii).

**C.     The Plea Agreement & Guideline Computations**

Defendant agreed to plead guilty to the single count indictment. The government will, subject to the limitations set forth in the agreement, recommend that defendant receive a three-level reduction for acceptance of responsibility. The government believes the following PSR computation applies[1]:

| Enhancement | Government's Position |
|---|---|
| Base—<br>USSG § 2D1.1(c)(1) | 38 (not contested) |
| Firearm—<br>USSG §§ 2D1.1(b)(1) | +2 (contested) |
| Acceptance of Responsibility—<br>USSG § 3E1.1 | -3 (not contested) |
| Variance—<br>18 U.S.C. § 3553(a) | -4 (not contested, but defense is seeking a larger variance) |
| **Government's Total Offense Level** | 33 |

/ / /

---

[1] Contreras is also a career offender pursuant to USSG §4B1.1(b)(1). However, he is one of those rare defendants whose career offender guidelines are lower than his actual guidelines. As such, the career offender enhancement has no impact on his guideline calculation. (*See* PSR ¶ 38.)

**Government's Sentencing Memorandum**                                                              **Page 3**

III.  **Argument**

A.  **Contested Guideline Issues**

Pursuant to the plea agreement, Contreras can argue that the two-level enhancement for possession of a firearm does not apply. Unless it is "clearly improbable" the gun was connected to the offense, the two-level enhancement is applicable. USSG §§ 2D1.1(b)(1), Application Note 11 (A). Contreras has the burden on this issue.

The government and probation agree that the two-level enhancement applies. (*See* PSR ¶ 22-27.) Even though the pistol was on the driver's person, it was near both Contreras and the drugs. Contreras was aware of the gun (he had shot the gun with the driver), and both the driver and Contreras were working together to distribute the drugs. In fact, Contreras had the more senior role. It is also worth noting that both of Contreras' prior delivery convictions involved firearms. (PSR ¶¶ 48 and 50.) Defense cannot show that it was "clearly improbable" that the gun was connected to the offense.

B.  **Government's Recommended Sentence**

This case is aggravating on multiple levels. Initially, it is aggravating as Contreras was trafficking a massive amount of methamphetamine into Oregon (over 33 pounds). Methamphetamine continues to poison communities in Oregon, and simply taking this large amount of methamphetamine off the street it significant. Second, Contreras was trafficking this methamphetamine while one of his co-defendants was armed with a pistol. Third, when this incident occurred, Contreras was on post-prison supervision for drug trafficking. Prior to this incident, Contreras had two Oregon state convictions for drug trafficking and had been to prison in those cases. (PSR ¶¶ 48 and 50.) Contreras even has another California trafficking from the

**Government's Sentencing Memorandum**                                                                                                          **Page 4**

late 1990s. (PSR ¶ 44). Contreras certainly knew what he was doing was wrong, and the potential consequences of his actions, but did it anyway. Even a recent forty-five-month prison sentence for drug trafficking was insufficient to stop his actions. (PSR ¶ 50). A significant sentence will reflect the seriousness of the offense, protect the public, and hold defendant accountable.

### C.    Forfeiture & Abandonment.

Pursuant to the plea agreement in this case, Contreras is agreeing to abandon all right, title, and interest in the following items: (1) a Black suitcase; (2) Black/Silver Walther 9 mm pistol SN: WK091755; (3) 26 Rounds of 9mm ammunition; (4) Black holster; (5) Black Samsung phone; (6) Black flip phone; (7) Counterfeit identification documents; and (8) 2012 Jeep Liberty.

### IV.    Conclusion

Based on the foregoing, the government recommends that this Court impose a low-end guidelines sentence, followed by a five-year term of supervised release, subject to the conditions set forth in the PSR, and a $100 fee assessment.

Dated: July 22, 2022.                    Respectfully submitted,

                                         NATALIE K. WIGHT
                                         United States Attorney

                                         /s/ Marco A. Boccato
                                         MARCO A. BOCCATO, OSB #103437
                                         Assistant United States Attorney